IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
SALT LAKE CITY

| | |
|---|---|
| BAYAN KHORAMI, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>INSTRUCTURE HOLDINGS, INC.,<br><br>Defendant. | Case No. 2:26-cv-418<br><br>**CLASS ACTION**<br><br>**COMPLAINT JURY TRIAL**<br><br>**DEMANDED** |

Plaintiff Bayan Khorami ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this Class Action Complaint against Instructure Holdings, Inc. ("Defendant"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## I.   INTRODUCTION

1.      Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable Information ("PII" or "Private Information")[1] that was impacted in a data breach (the "Data Breach" or the "Breach").

---

[1] See 2 C.F.R. § 200.79 (defining personally identifiable information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information).

COMPLAINT - CLASS ACTION - 1

2.     Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it and its accompanying responsibility to store it securely.

3.     Defendant is an educational technology company that develops and publishes Canvas Learning Management System ("LMS"), a platform that manages online learning materials and allows students to communicate with their teachers; view assignments, grades, and other learning material; and submit assignments. Defendant is headquartered in Salt Lake City, Utah.

4.     Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5.     Defendant failed to take precautions designed to keep individuals' Private Information secure.

6.     On or around May 1, 2026, Defendant announced that it was the victim of a cybersecurity incident at the hands of a criminal threat actor.[2] This criminal threat actor was able to access user information, including but not limited to, names, email addresses, student ID numbers, and private messages.[3]

7.     On or around May 5, 2026, cybercriminals again accessed Defendant's systems and threatened to release the exfiltrated information.

8.     On May 6, 2026, Defendant confirmed that it was investigating the issue.

9.     While the security incident was ongoing, the criminal threat actor, ShinyHunters, released a statement posted prominently on Defendant's Canvas webpage threatening to exploit the exfiltrated information.

---

[2] Instructure Status, https://status.instructure.com/ (last visited May 8, 2026).
[3] *Id.*

COMPLAINT - CLASS ACTION - 2

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

10. Upon information and belief, the criminal threat actor was able to exfiltrate several terabytes of data affecting 8,809 institutions and approximately 275,000,000 students, teachers, and staff.[4]

11. Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices in its programs.

12. Defendant admits that unauthorized individuals accessed information in its system.

13. The Private Information compromised in the Data Breach contained identifying information which can be used by cybercriminals. The data included, but is not limited to, names, email addresses, student ID numbers, and private messages.

14. Armed with the Private Information accessed in the Data Breach (and a head start), data thieves can commit a variety of crimes.

15. Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

16. Despite having the financial means, knowledge, and personnel necessary to prevent the Data Breach, Defendant failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiff

---

[4]Instructure Holdings, Inc. (Canvas LMS, instructure.com), Ransomware.Live, https://www.ransomware.live/id/SW5zdHJ1Y3R1cmUgSG9sZGluZ3MsIEluYy4gKENhbnZhcyIExNUywgaW5zdHJ1Y3R1cmUuY29tKUBzaGlueWh1bnRlcnM (last visited May 8, 2026).

COMPLAINT - CLASS ACTION - 3

and Class Members, causing the exposure of Plaintiff's and Class Members' Private Information.

17. Plaintiff brings this class action lawsuit to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained.

18. The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

19. Upon information and belief, Defendant failed to monitor properly and failed to implement adequate security practices with regard to the computer network and systems that housed the Private Information.

20. Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct as the Private Information that Defendant collected and maintained is now in the hands of data thieves and other unauthorized third parties.

21. Plaintiff seeks to remedy these harms individually and on behalf of all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

22. Accordingly, Plaintiff, on behalf of himself and the Class, asserts claims for negligence; breach of implied contract; and violations of the Washington Consumer Protection Act.

## II. PARTIES

*Plaintiff*

23. Plaintiff is a citizen and resident of Bellevue, Washington.

*Defendant*

24. Defendant is a Delaware corporation that maintains its principal place of business at 6330 S 3000 E, Suite 700, Salt Lake City, Utah 84121.

COMPLAINT - CLASS ACTION - 4

### III.    JURISDICTION AND VENUE

25.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of Class Members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A). Defendant has its principal place of business located in this District.

26.    This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains its principal place of business in this District.

27.    Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

### IV.    FACTUAL ALLEGATIONS

*Background on Defendant*

28.    Defendant is a Utah-based educational technology developer and publisher that provides Canvas LMS, a platform used by thousands of schools across the United States to manage online learning materials, facilitate communications between students and teachers, view assignments and grades, and submit quizzes, tests, and assignments.

29.    Defendant and its client schools require users of Canvas LMS, including Plaintiff and Class Members, to provide Private Information as a condition of using the platform.

30.    Upon information and belief, Defendant made promises and representations to individuals, including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

COMPLAINT - CLASS ACTION - 5

31.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

32.     As a result of collecting and storing the Private Information of Plaintiff and Class Members, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff's and Class Members' Private Information from disclosure to third parties.

**The Data Breach**

33.     Upon information and belief, on or about October 3, 2025, a cybercriminal group known as ShinyHunters gained access to Defendant's systems.[5]

34.     On or about May 1, 2026, Defendant announced a cybersecurity incident perpetrated by the same criminal threat actor.[6] Defendant launched an investigation to determine the nature and scope of the Data Breach.[7]

35.     Defendant determined that an unauthorized actor accessed information from Defendant's systems.[8]

36.     On or about May 6, 2026, ShinyHunters again accessed Defendant's servers and displayed a ransom message on the Canvas LMS dashboard. Defendant stated that it was "continuing to investigate this issue."[9]

37.     Upon information and belief, the threat actor exfiltrated from Defendant's servers information affecting nearly 9,000 schools and approximately 275 million individuals.

---

[5]Instructure.com - Canvas, Ransomware.Live, https://www.ransomware.live/id/SW5zdHJ1Y3R1cmUuY29tIC0gQ2FudmFzQHNoaW55aHVudGVycw (last visited May 8, 2026).

[6]Instructure Status, https://status.instructure.com/ (last visited May 8, 2026).

[7]*Id.*

[8]*Id.*

[9]*Id.*

COMPLAINT - CLASS ACTION - 6

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

38.     As a result of the Data Breach, Plaintiff's and Class Members' personal information—including but not limited to names, email addresses, student ID numbers, and private messages—was compromised.[10]

39.     Defendant failed to take precautions designed to keep individuals' Private Information secure.

40.     Defendant had obligations created by the FTC Act, contract, common law, and industry standards to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

41.     Defendant failed to use reasonable security procedures and practices, including encryption, appropriate to the sensitivity of the Private Information it maintained for Plaintiff and Class Members.

42.     Those failures permitted an unauthorized third party to access and acquire files containing Plaintiff's and Class Members' Private Information.

43.     ShinyHunters threatened to publish Plaintiff's and Class Members' Private Information on the dark web, creating a continuing risk that the information will be sold, listed, or misused.

***Defendant Acquires, Collects, and Stores Plaintiff's and Class Members' Private Information***

44.     As a condition of obtaining services from Defendant or its clients, Defendant and its clients required Plaintiff and Class Members to provide their Private Information.

45.     Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiff's and Class Members' Private Information, Defendant would be unable to perform its services.

46.     At all relevant times, Defendant knew it was storing sensitive Private Information and that, as a result, its system would be an attractive target for cybercriminals.

---

[10] *Id.*

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

47.     Defendant also knew that a breach of its systems, and exposure of the information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose Private Information was compromised, as well as intrusion into their private information.

48.     Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiff and Class Members.

49.     Despite repeated data incidents at the hands of the same group of criminal threat actors, Defendant failed to properly secure Plaintiff's and Class Members' Private Information.

***Defendant Knew or Should Have Known of the Risk of a Cyberattack Because Entities in Possession of Private Information Are Particularly Susceptible***

50.     Data thieves regularly target entities like Defendant because those entities maintain sensitive information that can be monetized through unauthorized access.

51.     Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting entities that collect and store Private Information.

52.     In light of recent high-profile data breaches at industry-leading companies, including, e.g., Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the Private Information that it collected and maintained would be targeted by cybercriminals.

53.     In 2024, 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records—a 211% increase year-over-year.[11]

---

[11] 2024 Data Breach Annual Report, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last visited May 9, 2026).

COMPLAINT - CLASS ACTION - 8

54.    The 330 breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.

55.    Defendant was, or should have been, fully aware of the significant volume of data on Defendant's server(s), and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

56.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

57.    The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long-lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

58.    These facts placed Defendant on notice of the foreseeable consequences of inadequate data security, including the costs imposed on Plaintiff and Class Members after a breach.

### Defendant Fails to Comply with FTC Guidelines

59.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

60.    In 2016, the FTC updated its publication, *Protecting Personal Information*: *A Guide for Business*, which established cybersecurity guidelines for businesses. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on

COMPLAINT - CLASS ACTION - 9

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. [12]

61.     The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach. [13]

62.     The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

63.     The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

64.     These FTC enforcement actions include actions against entities that fail to adequately protect individuals' data, like Defendant. *See, e.g.*, *In the Matter of LabMD, Inc., a corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

65.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or

---

[12]Protecting Personal Information: A Guide for Business, FEDERAL TRADE COMMISSION (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited May 9, 2026).
[13]*Id.*

COMPLAINT - CLASS ACTION - 10

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

66.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to individuals' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

67.     Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of its users; Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

***Defendant Fails to Comply with Industry Standards***

68.     As noted above, experts studying cyber security routinely identify entities in possession of PII as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

69.     Several best practices have been identified that companies in possession of PII, like Defendant, should at a minimum implement, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backing up data; and limiting which employees can access sensitive data.

70.     Other best cybersecurity practices that are standard include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls,

COMPLAINT - CLASS ACTION - 11

switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

71. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

72. These foregoing frameworks set the existing and applicable industry standards for a business's obligations to provide adequate data security for its users' sensitive information. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

### Defendant Owed Plaintiff and Class Members a Duty to Safeguard their Private Information

73. Defendant owed Plaintiff and Class Members a duty to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. That duty included implementing reasonable safeguards, limiting access, training employees and authorized users, monitoring for compromise, acting on security warnings, and implementing protocols that adequately protect the Private Information of Class Members.

74. Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

### The Data Breach Increases Plaintiff's and Class Members' Risk of Identity Theft

75. Because the Private Information was allegedly unencrypted and accessed by an unauthorized actor, Plaintiff and Class Members face a continuing risk that their information will be posted, sold, or otherwise misused.

COMPLAINT - CLASS ACTION - 12

76. The link between a data breach and the risk of identity theft is simple and well established. Criminals monetize stolen Private Information by selling it on black markets or using it to commit identity-theft-related crimes.

77. Plaintiff's and Class Members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and Class Members and to profit from their misfortune.

78. As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

   a. The loss of the opportunity to control how their Private Information is used;

   b. The lost value of their Private Information;

   c. The compromise and continuing publication of their Private Information;

   d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

   e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

   f. Unauthorized use of stolen Private Information; and

   g. The continued risk to their Private Information that remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Private Information in its possession.

79. Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Private Information can be worth up to $1,000.00 depending on the type of information obtained.

80. Because stolen Private Information can trade on black market for years, Plaintiff and Class Members face a continuing risk that their compromised information will be misused.

COMPLAINT - CLASS ACTION - 13

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

81. One such example of criminals using Private Information for profit is the development of "Fullz" packages.

82. Cybercriminals can cross-reference stolen data with another source of Private Information, including unregulated data publicly available elsewhere, to assemble complete dossiers on individuals with an astonishingly comprehensive scope and degree of accuracy. These dossiers are known as "Fullz" packages.

83. The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

84. Identity thieves can combine stolen identifying information with other data to open accounts, obtain services, submit fraudulent claims, or otherwise impersonate victims.

85. This was a financially motivated Data Breach because cybercriminals generally target companies like Defendant to obtain information that can be ransomed or monetized on black markets.

86. These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to PII, *they will use it*.

87. Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.

***Loss of Time to Mitigate the Risk of Identity Theft and Fraud***

88. As a result of the recognized risk of identity theft, when a data breach occurs and an individual is notified by a company that their Private Information was compromised, the reasonable person is expected to take steps and spend time to address the dangerous situation,

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft or fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm.

89.    Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must monitor their financial accounts for many years to mitigate the risk of identity theft.

90.    Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as changing passwords and resecuring their own computer systems.

91.    Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[14]

92.    Plaintiff's mitigation efforts are also consistent with the steps the FTC recommends data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[15]

93.    And for those Class Members who experience actual identity theft and fraud, the GAO Report noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

[14]*See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf (last visited May 9, 2026).
[15]*See* Federal Trade Commission, Identity Theft.gov, https://www.identitytheft.gov/Steps (last visited May 9, 2026).

COMPLAINT - CLASS ACTION - 15

*Diminution of Value of Private Information*

94.     Private Information is valuable property.[16] Its value is axiomatic, considering the value of Big Data in corporate America and that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates, beyond doubt, that Private Information has considerable market value.

95.     This kind of data, as one would expect, demands a much higher price on the dark web. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[17]

96.     An active and robust legitimate marketplace for personal data also exists. In 2019, the data-brokering industry was worth roughly $200 billion.[18] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to data brokers, marketing platforms, or consumer panels in exchange for compensation.[19]

97.     As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

98.     The fraudulent activity resulting from the Data Breach may not come to light for years.

---

[16]*See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," at 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last visited May 9, 2026) ("GAO Report").
[17]Tim Greene, Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers, IT WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hackpersonal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited May 9, 2026).
[18]https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last visited May 9, 2026).
[19]https://datacoup.com/ (last visited May 9, 2026).

COMPLAINT - CLASS ACTION - 16

99.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

100.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to millions of individuals' Private Information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

101.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

***The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary***

102.    Given the targeted nature of the attack, the alleged volume of compromised data, and the type of Private Information involved, Plaintiff and Class Members reasonably face future costs for credit monitoring and identity-theft protection.

103.    Consequently, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

104.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft resulting from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear, but for Defendant's failure to safeguard their Private Information.

***Plaintiff's Experience***

105.    At all times relevant, Plaintiff Bayan Khorami was a student at Seattle University, which used Defendant's Canvas LMS.

COMPLAINT - CLASS ACTION - 17

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

106. As a condition of accessing Canvas LMS, Defendant required Plaintiff to provide his Private Information.

107. Defendant was in possession of Plaintiff's Private Information before, during, and after the Data Breach.

108. Plaintiff reasonably understood and expected that Defendant would safeguard his Private Information and timely and adequately notify him in the event of a data breach. Plaintiff would not have allowed Defendant, or anyone in Defendant's position, to maintain his Private Information if he believed that Defendant would fail to implement reasonable and industry-standard practices to safeguard that information from unauthorized access.

109. Plaintiff greatly values his privacy and Private Information and takes reasonable steps to maintain the confidentiality of his Private Information. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

110. Plaintiff stores any and all documents containing Private Information in a secure location and destroys any documents he receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise his identity and credit card accounts.

111. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

112. Upon information and belief, as a result of the Data Breach, Plaintiff's Private Information was, or will be imminently, published on the dark web.

113. Plaintiff anticipates spending considerable time and money on an ongoing basis to try and mitigate and address harms caused by the Data Breach, and he remains at continuing risk of identity theft and fraud.

COMPLAINT - CLASS ACTION - 18

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

114.    Plaintiff has a continuing interest in ensuring that his Private Information, which upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

115.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress.

116.    As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after his Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time related to monitoring his accounts; (b) loss of privacy due to his Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendant did not adequately protect his Private Information; (d) emotional distress because identity thieves now possess his Private Information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that his Private Information has been stolen and likely published on the dark web; (f) lost value of his Private Information, a form of intangible property that Defendant obtained from Plaintiff; and (g) other economic and non-economic harm.

## V.    CLASS ALLEGATIONS

117.    Plaintiff brings this class action, individually and on behalf of the following Nationwide Class and Washington Subclass:

Nationwide Class: All individuals in the United States whose Private Information was accessed and/or acquired by an unauthorized party in the Data Breach (the "Class").

Washington Subclass: All individuals residing in the State of Washington whose Private Information was accessed and/or acquired by an unauthorized party in the Data Breach (the "Washington Subclass").

118.    Specifically excluded from the Classes are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or

COMPLAINT - CLASS ACTION - 19

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

directors, the judge assigned to this action, and any member of the judge's immediate family and staff.

119. Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

120. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

121. Numerosity: The Classes are so numerous that joinder of all Class Members is impracticable. Upon information and belief, Plaintiff estimates that the Class and Subclass are each comprised of thousands of members, if not more. The Classes are sufficiently numerous to warrant certification.

122. Typicality of Claims: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class Members, had his Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Classes, and his claims are typical of the claims of the members of the Classes. The harm suffered by Plaintiff is similar to that suffered by all other Class Members, which was caused by the same misconduct by Defendant.

123. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests antagonistic to, nor in conflict with, the Classes. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

124. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its

COMPLAINT - CLASS ACTION - 20

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

125.    Predominant Common Questions: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

b.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c.    Whether Defendant's storage of Plaintiff's and Class Members' Private Information was done in a negligent manner;

d.    Whether Defendant had a duty to protect and safeguard Plaintiff's and Class Members' Private Information;

e.    Whether Defendant's conduct was negligent;

f.    Whether Defendant's conduct violated Plaintiff's and Class Members' privacy;

g.    Whether Defendant took sufficient steps to secure individuals' Private Information;

h.    Whether Defendant was unjustly enriched; and

i.    The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

126.    Information concerning Defendant's policies is available from Defendant's records.

127.    Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

128.    The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of

COMPLAINT - CLASS ACTION - 21

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 ● FAX 206.682.2992

conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

129.    Given that Defendant has not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## VI.    CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
**(On behalf of Plaintiff and the Nationwide Class)**

130.    Plaintiff restates and realleges all of the factual allegations contained in paragraphs 1–129, as if fully set forth herein.

131.    Defendant knowingly collected, possessed, and maintained Plaintiff's and Class Members' Private Information, and therefore had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

132.    Defendant's duty also included a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

133.    Defendant knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Defendant was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

134.    Defendant owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. Defendant's duties included, but were not limited to, the following:

      a.    To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

COMPLAINT - CLASS ACTION - 22

> b.   To protect the Private Information in its possession by using reasonable and adequate security procedures and systems compliant with industry standards;
>
> c.   To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;
>
> d.   To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to the FTCA;
>
> e.   To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and
>
> f.   To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

135.   Defendant's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

136.   Defendant's duty also arose because Defendant was bound by industry standards to protect the confidential Private Information entrusted to it.

137.   Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Defendant owed them a duty of care to not subject them to an unreasonable risk of harm.

138.   Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendant's possession.

139.   Defendant, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

140.   Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

COMPLAINT - CLASS ACTION - 23

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

    a.     Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' Private Information;

    b.     Failing to adequately monitor the security of its networks and systems;

    c.     Allowing unauthorized access to Plaintiff's and Class Members' Private Information; and

    d.     Failing to comply with the FTCA.

141.    Defendant had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems (and the Private Information that it stored on them) from attack.

142.    Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised and exfiltrated, as alleged herein.

143.    Defendant's breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information, and loss of time and money to monitor their accounts for fraud.

144.    As a result of Defendant's negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

145.    Defendant also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach.

146.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

147.    The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

COMPLAINT - CLASS ACTION - 24

148.    Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

149.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

150.    Plaintiff restates and realleges all of the factual allegations contained in paragraphs 1–129, as if fully set forth herein.

151.    Plaintiff and Class Members were required to deliver their Private Information to Defendant as part of the process of obtaining services from educational institutions. Plaintiff and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for services and would not have paid for Defendant's services, or would have paid less for them, had they known that Defendant's data security practices were substandard.

152.    Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

153.    Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing educational services to Plaintiff and Class Members.

154.    Plaintiff and the Class entrusted their Private Information to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

COMPLAINT - CLASS ACTION - 25

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

155. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations (including FTC guidelines on data security) and were consistent with industry standards.

156. Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only; (b) take reasonable steps to safeguard that Private Information; (c) prevent unauthorized disclosures of the Private Information; (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information; (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses; and (f) retain the Private Information only under conditions that kept such information secure and confidential.

157. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

158. Plaintiff and Class Members, or educational institutions on their behalf, paid money to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

159. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

160. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

161. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

162.    Defendant breached the implied contracts it made with Plaintiff and the Class by failing to adequately safeguard and protect Plaintiff's and Class Members' Personal Information.

163.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information.

164.    As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

165.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

166.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures and (ii) submit to future annual audits of those systems and monitoring procedures.

## COUNT III
## VIOLATIONS OF THE WASHINGTON STATE CONSUMER PROTECTION ACT, RCW 19.86.010 ET SEQ.
### (On behalf of Plaintiff and the Washington Subclass)

167.    Plaintiff restates and realleges all of the factual allegations contained in paragraphs 1–129, as if fully set forth herein.

COMPLAINT - CLASS ACTION - 27

168.    The Washington Consumer Protection Act, RCW 19.86.020 (the "CPA") prohibits any "unfair or deceptive acts or practices" in the conduct of any trade or commerce as those terms are described by the CPA and relevant case law.

169.    Defendant is a "person" as described in RCW 19.86.010(1).

170.    Defendant engages in "trade" and "commerce" as described in RCW 19.86.010(2) in that it engages in the sale of services and commerce directly and indirectly affecting the people of the State of Washington.

171.    In the course of conducting business in Washington, Defendant committed "unfair acts or practices" by, among other things, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and Class Members' Private Information. Such practices were likely to cause substantial injury to consumers, were not reasonably avoidable by consumers, and were not outweighed by countervailing benefits. Plaintiff and Class Members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices. As described above, Defendant's unfair acts and practices are ongoing and continue to this date.

172.    Defendant's "unfair or deceptive acts or practices" affect the public interest because they are substantially injurious to persons, they have caused injury to other persons, and they have the capacity to injure additional persons.

173.    The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in its wrongful conduct.

174.    Defendant's unfair and deceptive acts and practices directly and proximately caused injury to Plaintiff's and Class Members' businesses and property. Plaintiff and Class Members have suffered, and will continue to suffer, actual damages and injury in the form of, among other things, (1) an imminent, immediate, and continuing increased risk of identity theft

COMPLAINT - CLASS ACTION - 28

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

and identity fraud—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (2) invasion of privacy; (3) breach of the confidentiality of their Private Information; (4) deprivation of the value of their Private Information, for which there is a well-established national and international market; (5) the financial and temporal cost of monitoring credit, monitoring financial accounts, and mitigating damages; and/or (6) investment of substantial time and money in monitoring and remediating the harm inflicted upon them.

175.    The injuries suffered by Plaintiff and the Class greatly outweigh any potential countervailing benefit to consumers or to competition and are not injuries that Plaintiff and the Class should or could have reasonably avoided.

176.    Unless restrained and enjoined, Defendant will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiff, therefore, on behalf of himself, Class Members, and the general public, also seeks restitution and an injunction prohibiting Defendant from continuing such wrongful conduct, and requiring Defendant to modify its corporate culture and design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Private Information.

177.    Plaintiff, individually and on behalf of the Washington Subclass, also seeks to recover actual damages sustained by each Class Member together with the costs of the suit, including reasonable attorneys' fees. In addition, Plaintiff requests an increase in the damages award for each Washington Subclass member to three times the actual damages sustained, not to exceed $25,000.00 per class member.

### VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class described above, seeks the following relief:

a.    An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Classes as requested herein, appointing the undersigned as

COMPLAINT - CLASS ACTION - 29

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Class counsel, and finding that Plaintiff is the proper representative of the Nationwide Class and Washington Subclass requested herein;

b.    Judgment in favor of Plaintiff and Class Members awarding appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d.    An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e.    An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.    A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law;

g.    Leave to amend the pleadings to conform to the evidence presented at trial; and

h.    An award of such other and further relief as this Court may deem just and proper.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

DATED this 12th day of May, 2026.

**TOUSLEY BRAIN STEPHENS PLLC**

*/s/ Kim D. Stephens*
Kim D. Stephens*, P.S., WSBA #11984
*/s/ Cecily C. Jordan*
Cecily C. Jordan*, WSBA #50061
*/s/ Arshia Nilchian*
Arshia Nilchian*, WSBA #64496
1200 5th Ave, Suite 1700
Seattle, WA 98101
Tel. 206.682.5600
kstephens@tousley.com
cjordan@tousley.com
anilchian@tousley.com

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

COMPLAINT - CLASS ACTION - 30

/s/ Jason L. Lichtman
Jason L. Lichtman, Utah Bar No. 18770
Michael J. Miarmi*
John D. Maher*
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Tel.: (212) 355-9500
Fax: (212) 355-9592
Email: jlichtman@lchb.com
Email: mmiarmi@lchb.com
Email: jmaher@lchb.com

**\* Pro Hac Vice Forthcoming**

*Attorneys for Plaintiff and the Proposed Class*

COMPLAINT - CLASS ACTION - 31